THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BARRY DOE, | * | |
| On behalf of himself and as Next Friend | | |
| of his minor children; M.D. (2006); | * | |
| E.D. (2008); and K.D. (2009) | | |
| | * | |
| Plaintiffs, | | |
| | * | Civil Action No. PX-17-812 |
| v. | | |
| | * | |
| DAVID J. MERON, | | |
| *et al.* | * | |
| | | |
| Defendants. | | |

\*\*\*\*\*

## MEMORANDUM OPINION

Pending in this case is a motion to dismiss or for summary judgment filed by Defendants

Barbara R. Craig, Terry Greene, Clark Jackson, David LaSpisa, David J. Meron, John Scorby,

Steven Stutzman, and Kristen E. Webb, ECF No. 15, as well as a motion to dismiss filed by the

United States of America. ECF No. 17. Also pending is Plaintiff Barry Doe's motion to set

aside Defendants' scope of employment certification, ECF No. 24. The motions are fully

briefed, and the Court now rules because no hearing is necessary. Loc. R. 105.6. For the

following reasons, the motion to set aside the scope of employment certification, ECF No. 24, is

DENIED, and Defendants' motions to dismiss are GRANTED.

## I.    Background[1]

Plaintiff Barry Doe ("Doe"), proceeding pseudonymously, brings this action on behalf of

himself and his three minor children, Martin Doe ("M.D."), Erica Doe ("E.D."), and Kimberly

Doe ("K.D.") against Defendants Barbara R. Craig, Terry Greene, Clark Jackson, David Laspisa,

---

[1] The Court treats the individual defendants' motion, ECF No. 15, as one to dismiss the Complaint. Unless otherwise noted, all facts are taken from the Complaint and construed as true for purposes of this motion. Further, while the Court cites to sealed documents throughout this Memorandum Opinion, all sealed and/or confidential information was broadly referenced or omitted to protect the pseudonymous Plaintiffs' privacy.

David J. Meron, John Scorby, Steven Stutzman, and Kristen E. Webb. ECF No. 1. At all times

relevant to the Complaint, Doe was a United States citizen and civil servant employed by the

United States Navy ("Navy") at Naval Support Activity Bahrain ("NSA Bahrain"), in the

Kingdom of Bahrain. ECF No. 1 at ¶¶ 28, 41. The vast majority of the events alleged in the

Complaint took place at NSA Bahrain. *See* ECF No. 1.

Defendants David J. Meron ("Meron"), David LaSpisa ("LaSpisa"), and John Scorby

("Scorby") are Navy officers. ECF No. 1 at ¶ 32, 37, 39. Specifically, Meron is a resident of

Kansas and, at all times relevant to the Complaint, a naval officer who served as the Installation

Commanding Officer ("Commanding Officer") at NSA Bahrain. ECF No. 1 at ¶¶ 32, 37.

LaSpisa is a resident of Florida and commissioned naval officer at NSA Bahrain. ECF No. 1 at

¶¶ 32, 37. Scorby was an American citizen domiciled in Italy and Rear Admiral, serving as the

Commander, Navy Region Europe, Africa, and Southwest Asia, whose authority extended to

NSA Bahrain. ECF No. 1 at ¶ 39.

Defendants Clark Jackson ("Jackson") and Steven Stutzman ("Stutzman") are adult

American citizens employed by the Navy. ECF Nos. 1 at ¶¶ 36, 38. Jackson is a resident of

Washington based at NSA Bahrain, and Stutzman is an American citizen domiciled in Italy.

ECF No. 1 at ¶¶ 36, 38. Defendant Terry Greene ("Greene") is an adult American citizen

domiciled in the Kingdom of Bahrain and employed by the Department of Defense Education

Activity (DODEA) as the principal of the Bahrain School, which is operated by the Department

of Defense (DOD). ECF No. 1 at ¶ 35. Defendants Barbara R. Craig ("Craig") and Kristen E.

Webb ("Webb") are residents of Maryland and were employed by or affiliated with DOD or the

Defense Health Agency (DHA). ECF Nos. 1 at ¶¶ 33–34. DHA is based in Bethesda, Maryland.

ECF No. 1 at ¶¶ 33–34.

On or about June 2014, Doe began an assignment with the Navy at NSA Bahrain. ECF No. 1 at ¶ 40. Doe's three minor children, M.D. (2006), E.D. (2008), and K.D. (2009) (collectively, "minor Plaintiffs"), went to Bahrain with him. ECF No. 1 at ¶ 40. All three minor Plaintiffs attended the Bahrain School, which is operated by DOD, from 2014 through 2015. ECF No. 1 at ¶ 42.

The events giving rise to this suit concern DOD's 2015 investigation into allegations that Doe abused and neglected his children. Taking serious issue with the manner in which the investigation was handled, Doe alleges that "a group consisting of Defendants Greene, Craig, Jackson, LaSpisa, Meron, Webb, and others in Maryland, Bahrain, Europe, and the National Capital Region (NCR) conceived of a plot to seize" his three children, the minor Plaintiffs. ECF No. 1 at ¶ 43. Doe asserts that Meron, Jackson, LaSpisa, Stutzman and Scorby acted in concert to conduct a baseless investigation that caused physician Craig and social worker Webb to "seize, interrogate, and batter the three minor Plaintiffs." *See generally* ECF No. 1.

Among the other claimed violations, Doe avers that Defendants interrogated his children without his permission. Doe particularly avers that in response to requests to interview five-year-old K.D. outside Doe's presence, Doe "warned Jackson clearly that no one was to contact any of his three children without him being present." ECF No. 1 at ¶¶ 51, 53. Doe further alleges that on "information or belief," Meron falsely averred in signed correspondence that Meron had obtained consent from Doe to speak to the minor Plaintiffs, even though no such consent was given. ECF No. 1 at ¶¶ 54, 59.

With regard to DOD's examination of the children, Doe avers that during the investigation, Craig and Webb traveled from Maryland to Bahrain at the direction of the other Defendants to "seize, detain, and interrogate all three minor children at the Bahrain School."

ECF No. 1 at ¶ 66.  With Defendant Greene's assistance, Craig and Webb interrogated the children at the School but outside the presence of Doe and without counsel.  Craig and Webb also filmed this interrogation without consent.  ECF No. 1 at ¶¶ 67, 68.  While Craig and Webb questioned the children, Meron ordered Naval Security Forces (NSF) to exclude Doe from the Bahrain School should he attempt to enter.  ECF No. 1 at ¶¶ 72–73.

Later that same day, the children were seized a second time while at the NSA Bahrain Child Youth Program.  ECF No. 1 at ¶ 74.  Doe contends that Craig medically evaluated the children in a manner that "breached" their clothing and involved touching their genitals, rectums, and breasts.  ECF No. 1 at ¶ 74, 77–78.  The minor Plaintiffs "believed they had been abducted by strangers with deadly weapons and would be killed if they did not submit" to Craig's evaluation.  ECF No. 1 at ¶ 79.  During this evaluation, Greene specifically denied to Doe that she knew where the minor Plaintiffs were located.  ECF No. 1 at ¶¶ 80, 81.

The next day, Doe was seized and handcuffed by NSF officers while taking his children to school.  ECF No. 1 at ¶ 82.  NSF did not have a key to the handcuffs, and Doe was restrained for several minutes and then released.  ECF No. 1 at ¶ 85.  No charges were filed against Doe.  *See* ECF No.1.  Doe then met with Meron in the presence of Naval Officer, Scott Cloyd during which time Meron purportedly admitted that he had "no lawful authority to seize" Doe or his children, and that "the higher superiors in the Navy had 'pressured' him to commit these acts."  ECF No. 1 at ¶ 89.  Meron further admitted that NSF's seizure of Doe was unlawful, and was part of the "plot to secretly seize [Doe's] children" without Doe's knowledge.  ECF No. 1 at ¶ 90.  A few days later, Doe met with Defendant Greene, Eldridge Groomes, and Calvin Caldwell to discuss the events that transpired at the Bahrain School.  ECF No. 1 at ¶ 92.  When pressed

about her role, Greene admitted that Meron had directed her to allow Craig and Webb "to seize the three minor Plaintiffs and film them against their will." ECF No. 1 at ¶¶ 92–93.

Based on this course of events, Doe feared for his life and the safety of his family. He departed Bahrain on August 6, 2015, and "hastily relocated to Texas at a significantly reduced rate of pay." ECF No. 1 at ¶ 88. According to Doe, the three minor Plaintiffs "continue to experience nightmares" and "serious emotional disturbances consistent [with] children who have been forcibly abducted and sexually molested by strangers." ECF No. 1 at ¶ 98.

On or about May 26, 2016, Plaintiffs filed administrative claims regarding these events with the Navy, DODEA, and DHA. ECF No. 1 at ¶ 94; *see also* ECF No. 18-7. Plaintiffs assert that "[b]y information or belief, none of the agencies or Defendants responded to or attempted to resolve the [MCA] administrative claim filed by the Plaintiffs." ECF No. 1 at ¶ 95. It was later clarified that on March 27, 2017 — three days after the Complaint was filed — the Navy tendered a settlement offer arising from that administrative claim. *See* ECF No. 25 at 28; *see also* ECF No. 15-19.

Having failed to resolve the case administratively, Doe filed suit against Defendants in this Court, asserting that all Defendants in their individual and official capacities violated Plaintiffs' Fourth Amendment right against unlawful searches and seizures (Counts I, II, and III), First and Fifth Amendment rights to "parentage and familial relations" (Count IV), their Fifth Amendment rights of due process and equal protection (Count V), and conspiracy in violation of 42 U.S.C. § 1985 (Count XI). Plaintiffs also bring common law tort claims for intentional infliction of emotional distress (Count VI), assault (Count VII), battery (Count VIII), false imprisonment (Count IX), false light invasion of privacy (Count X), and conspiracy under 42 U.S.C. § 1985 (Count XI). ECF No. 1.

On September 18, 2017, and pursuant to the Federal Tort Claims Act ("FTCA"), the United States of America ("United States") substituted itself as the proper party defendant for all claims against the Defendants in their official capacities, and all common law tort claims asserted against Defendants Meron, Craig, Webb, Greene, LaSpisa, Stutzman, Scorby, and Jackson. ECF No. 16. In connection with its substitution motion, the United States filed a certification attesting that Defendants acts as alleged in the Complaint were within the scope of Defendants' DOD employment, and thus substitution of the United States under the FTCA was proper.

The United States then moved to dismiss all claims, arguing that under the foreign country exception to the FTCA, the Government cannot be sued for events that occurred on foreign soil. ECF No. 17. The individual Defendants also moved to dismiss, or for summary judgment on the constitutional claims, arguing that no implied cause of action exists pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 1971 (1971). ECF No. 15.

On November 17, 2017, Doe moved to set aside the United States' employment certification, contending that Defendants acted outside the scope of their federal employment. ECF No. 24. Doe also opposes dismissal of the remaining claims, arguing the Complaint asserts sufficient factual and legal bases for the case to proceed. The Court first addresses whether the United States properly substituted itself for the individual defendants.

## II. Motion to Set Aside Scope of Employment Certification

On September 18, 2017, Defendants submitted a Certification of Scope of Employment ("Certification") from the Acting Director of the Torts Branch, Civil Division, of the United States Department of Justice. The Certification attests that all individual Defendants were acting

within the scope of their federal office or employment when the events alleged in the Complaint occurred. *See* ECF No. 15-18. The Certification further states that at all relevant times, Defendant Craig was "a physician employed by the Department of Defense" and acting within the scope of her duties as a DOD physician. ECF No. 15-18.

### A. Legal Standard

#### i. Federal Tort Claims Act (FTCA)

It is well settled that under the Federal Tort Claims Act (FTCA), the United States is the proper party for wrongdoing committed by employees acting within the scope of their federak employment. The FTCA provides:

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

*See* 28 U.S.C. § 2679(d)(1).[2] By allowing substitution of the United States, the FTCA "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007); *United States v. Smith*, 499 U.S. 160, 163 (1991).

A certification may simply attest that employees "were acting within the scope of [their] employment . . . at the time of the conduct alleged in [the] complaint." *Osborn v. Haley*, 549 U.S. 225, 230–31 (2007). Even where the certification appears factually thin, unless challenged, it remains conclusive.[3] *Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1153 (4th Cir. 1997). If

---

[2] Similarly, the Gonzalez Act, which applies to Craig, mandates that upon certification of the Attorney General, professional malpractice suits against DOD medical personnel must be brought under the FTCA and against the United States. *See* 10 U.S.C. § 1089(a).

[3] Plaintiffs' repeated rebuke of the Certification as "provid[ing] no details" and applying "to all eight defendants together" in this regard carries no weight. *See* ECF No. 24-2 at ¶¶ 16, 17, 19, 20, 21, 22.

challenged, the plaintiff must prove by a preponderance of the evidence that the defendant was acting outside the scope of his employment. *Gutierrez de Martinez*, 111 F.3d at 1153 (citing cases). The Court reviews the scope of employment question de novo. *Id.* at 1154; *see also Gutierrez de Martinez v. Lamangno*, 515 U.S. 417, 434–35 (1995). In connection with the court's review, defendants may submit evidence in support of certification. *Id.* at 1155. If the plaintiff fails to sustain his burden, the certification stands, and the Court substitutes the United States as the sole defendant for all tort claims. *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997); *see also* 28 U.S.C. § 2679(d).

Because substitution is the practical mechanism to effectuate an individual employee's immunity from suit, challenges to the scope-of-employment certification are resolved early in the litigation. *Maron*, 126 F.3d at 321; *see also Osborn*, 549 U.S. at 238 (noting "the Westfall Act [is] a measure designed to immunize covered federal employees not simply from liability, but from suit"). If genuine issues of disputed fact remain as to the scope-of-employment question, the Court may permit limited discovery and conduct an evidentiary hearing. *Maron*, 126 F.3d at 321. However, the Court must "remain cognizant of the considerations weighing against protracted litigation under the Westfall Act," and must balance " 'the need for a meaningful review of the scope certification with the need to protect federal employees from burdensome discovery." *Gutierrez de Martinez*, 111 F.3d at 1155–56. Accordingly, the Court will only permit additional discovery or conduct a hearing where the plaintiff identifies "specific evidence that could be uncovered by further discovery beyond the speculative possibility of inconsistency." *Id.* at 1155. If a plaintiff's challenge to the certification merely argues that the defendant was motivated by personal or other bad purpose, "summary dismissal of the scope of

employment challenge is warranted." *Maron*, 126 F.3d at 327 (quoting *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996)).

Critically, "[s]ubstitution of the United States is not improper simply because the [U.S. Attorney's] certification rests on an understanding of the facts that differs from the plaintiff's allegations." *Osborn*, 549 U.S. at 230. Instead, the United States is the proper defendant "unless and until the District Court determines that the employee, in fact, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Id.* at 231.

### ii. Scope of Employment

As to the substantive law governing the scope-of-employment determination, the Court applies the law of the state in which the misconduct occurred. *See Jamison v. Wiley*, 14 F.3d 222, 227 n.2 (4th Cir. 1994). Where the challenged conduct occurred abroad, the choice of law becomes far less clear. *See Sosa v. Alvarez–Machain*, 542 U.S. 692, 707 (2004) (foreign law does not apply); *Gutierrez*, 111 F.3d at 1156, n. 6 (applying Virginia law per the parties' stipulation, but noting the choice-of-law difficulties presented by tortious conduct abroad could "present [] a novel twist" that "explains in part the foreign claims exception to the FTCA").

As Defendants correctly note, the few courts to consider federal employees' extra-territorial conduct have applied the law of the District of Columbia. *See* ECF No. 30 at 6; *Kashin v. Kent*, 457 F.3d 1033, 1037–38 (9th Cir. 2006); *see also Saleh v. Bush*, No. 13-cv-01124-JST, 2014 WL 7240277, *2 (N.D. Cal. Dec. 19, 2014), *aff'd Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017); *Rasul v. Rumsfeld*, 414 F. Supp. 2d 26, 32 (D.D.C. 2006) (noting that "the alleged tortious acts" occurred at Guantanamo detention facilities, and applying District of Columbia law), *aff'd sub nom. Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008), *vacated on other grounds*, 555 U.S. 1083 (2008); *Harbury v. Hayden*, 522 F.3d 413, 421–22 (D.C. Cir. 2008)

(applying District of Columbia law to torts allegedly committed by individual CIA employees in Guatemala), *cert denied* 555 U.S. 881 (2008). In *Kashin v. Kent*, the United States Court of Appeals for the Ninth Circuit reasoned that District of Columbia law should apply where the agency in question, the Department of State, was "located within the District of Columbia," and its foreign activities "inextricably bound up with the District of Columbia in its role as the nation's capital." *Kashin*, 457 F.3d at 1037–38 (citing *Rasul*, 424 F. Supp. 2d at 32). The *Kashin* court further reasoned that the pertinent Department of State policies had likely been crafted at its District of Columbia headquarters, thereby establishing a "nexus, albeit tenuous" to the tort that occurred overseas. *Id.* The Court persuasively emphasized that the application of District of Columbia law fulfills the need for a "single, cogent," and consistent body of *respondeat superior* law for tortious, extra-territorial acts by federal employees. *Kashin*, 457 F.3d at 1038.

The policy considerations undergirding *Kashin* apply equally, if not more, here. Defendants are military and civilian employees working for or affiliated with DOD, and many were stationed on a United States military base in Bahrain when the alleged tortious conduct occurred. Although DOD is headquartered just outside the District of Columbia, in Arlington, Virginia, its policy decisions — particularly those regarding the health and safety of DOD employees and dependents stationed abroad — implicate unique national security, diplomatic, and logistical concerns that are "inextricably bound up with the District of Columbia in its role as the nation's capital." *See Kashin*, 457 F.3d at 1037–38 (citing *Rasul*, 424 F. Supp. 2d at 32); *see also Harbury v. Hayden*, 444 F. Supp. 2d 19, 31–32 (D.D.C. 2008) (applying District of Columbia and Virginia law), *aff'd* 522 F.3d at 421 (applying only District of Columbia law); *accord Mundy v. Weinberger*, 554 F. Supp. 811, 818 (D.D.C. 1982) (noting that the Pentagon "is

located where it is because of its proximity to the nation's capital," is "hardly 'any' federal office," and "uses a Washington, D.C. mailing address"). This Court, therefore, will follow the Ninth Circuit's lead, and apply District of Columbia law with a view toward developing a uniform, coherent body of jurisprudence applicable to scope-of-employment challenges in the FTCA context.[4] *Gutierrez*, 111 F.3d at 1156, n. 6; *Kashin*, 457 F.3d at 1037–38.

The District of Columbia applies the scope of employment analysis enumerated by the Restatement (Second) of Agency, which sets out four factors for consideration: (1) whether the conduct of the kind the employee is employed to perform; (2) did the conduct occur substantially within the authorized time and space limits; (3) was the conduct actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against others, was the force not unexpectable by the master. *See* Restatement (Second) of Agency, § 228(1) (1958); *Allaithi v. Rumsfeld,* 753 F.3d 1327, 1330 (D.C. Cir. 2014). This test is applied "very expansively," and "in essence ask[s] 'whether the defendant merely was on duty or on the job when committing the alleged tort.' " *Allaithi*, 753 F.3d at 1330 (quoting *Harbury* 522 F.3d at 422 n.4). "The employer does not avoid liability for the employee's intentional torts . . . if the tort is committed partially because of a personal motive, such as revenge, as long as 'the employee [is] actuated, at least in part, by a desire to serve his principal's interest.' " *Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C. App. 1986) (citing *Jordan v. Medley*, 711 F.2d 211, 214 (D.C. Cir. 1983); *see also* Restatement (Second) of Agency § 2454 cmt. f.

---

[4] Doe argues that Maryland law applies because "some of the conduct at issue was planned or commenced in Maryland," and Defendants "contacted, involved, facilitated and colluded . . . in Maryland." See ECF No. 1 at ¶¶ 26, 48. As to the substantive claims, all events occurred at NSA Bahrain on May 27 and May 28, 2015 and have no connection to Maryland whatsoever. See ECF No. 1 at ¶¶ 167–171, 177–78, 182–187, 192–195, 199. To the extent that some aspect of the conspiracy claim occurred in Maryland, application of substantive Maryland law would not alter the outcome. As discussed more fully below, all Defendants were acting within the scope of their employment because "they were in furtherance of the employer's business and were 'authorized' by the employer.' " *Larsen v. Chinwuba*, 377 Md. 92 (2003) (quoting *Sawyer v. Humphries*, 322 Md. 247 (1991)).

## B.    Analysis

As an initial matter, the Court notes that Plaintiffs' motion to set aside the certification rests on an overarching misunderstanding of the applicable law.  Plaintiffs broadly assert that "[v]iolating the law or the U.S. Constitution can never be within the scope of federal employ." *See, e.g.* ECF No. 24-2 at ¶ 9.  However, all manner of claims can and are brought against state actors for intentional wrongdoing which, if proven, violate the law and the Constitution.  *See* 28 U.S.C. § 2679 (including "negligent or wrongful act[s] or omission[s]" among the torts for which the United States can be substituted as a defendant); *Unus v. Kane*, 565 F.3d 103 (4th Cir. 2009) (recognizing certification where the alleged assault-and-battery and false imprisonment were within the federal agents' scope of employment).  Accordingly, if Plaintiffs were correct, then no employee could ever be held liable as a state actor for wrongful conduct because the conduct, by definition, would fall outside the scope of his employment.  *Cf. Gilbert v. U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 306 F. Supp. 3d 776, 784 (D. Md. 2018) ("The fact that the employee's alleged acts were wrongful is not, alone, sufficient to show that they were conducted outside the scope of employment, because if courts were to 'separate the activity that constitutes the wrong from its surrounding context an otherwise proper exercise of authority — [they] would effectively emasculate the immunity defense.' ") (quoting *Maron*, 126 F.3d at 325)).  The Court therefore, rejects Plaintiffs' contention.

The Court also notes that Plaintiffs' offer of proof does little to establish that Defendants acted outside the scope of their employment in investigating allegations of child abuse.  Plaintiffs submit three documents with their motion: (1) an unsworn transcript of a lengthy conversation between Doe and Regina Waller in which the two review the investigation and Waller's prior report of how K.D. and Doe's relationship made her "uncomfortable," ECF No. 24-4; (2)

unverified notes of unknown origin regarding a "telephonic interview" of Valera Young who, from the notes, may have participated in the investigation of Doe and his children, ECF No. 24-6; (3) and Plaintiff Doe's lengthy sworn[5] affidavit refuting Defendants' explanation of events, ECF No. 24-8. The lion's share of Doe's evidence is rank hearsay of questionable admissibility. The Court similarly cannot credit Doe's conclusory characterizations of Defendants' nefarious motives as evidence. As for the substance of the evidence, even if considered and viewed most favorably to Doe, the evidence at best calls into question the manner and necessity of the investigation, but does not demonstrate that Defendants were without authority to conduct the investigation. *Maron*, 126 F.3d at 327; ECF No. 24-8 at ¶¶ 23, 48–49, 248; *see also* ECF No. 24-2 at ¶¶ 12, 15–22.

For similar reasons, the Court rejects Plaintiffs' request to conduct additional discovery on the scope-of-employment question. Like Plaintiffs' offer of proof, Plaintiffs do not aver any specific evidence that exists and that discovery would unearth that can defeat the scope of employment certification. *See Guiterrez de Martinez*, 11 F.3d at 1155. Rather, Plaintiffs generically contend that "limited discovery will lead to the facts of [each defendant's] full involvement." *See, e.g.* ECF No. 24-2 at ¶ 22. This proffer does not demonstrate the necessity for additional discovery. The request is denied.

 With these general determinations in mind, the Court turns next to whether the allegations of misconduct as to each Defendant are within the scope of his or her employment.

### 1. *David J. Meron; former Commanding Office at NSA Bahrain* (DOD)

Defendant Meron, as NSA Bahrain's Commanding Officer, led the abuse and neglect investigation concerning the Does. Meron specifically authorized and facilitated the

---

[5] While Plaintiff Doe's affidavit is sworn and notarized, the notary's certification is hastily handwritten in the margins of the affidavit, and is curiously dated *seven days* after it was submitted to this Court. Plaintiffs do not explain this discrepancy. *See* ECF No. 24-8.

examinations of minor Plaintiffs, and issued an order to exclude Doe, if necessary, from the

Bahrain School during those examinations.  *See* ECF No. 24-2 at ¶ 15.  None of the claimed

actions fell outside Meron's purview.

U.S. Naval Support Activity Bahrain Instruction 1752.3F  ("Instruction 1752.3F"), details

the operations of the Navy's Family Advocacy Program ("FAP"), tasked with handling

"incidents of child and/or domestic abuse within the military family."  *See* ECF No. 15-9.

Instruction 1752.3F specifically empowers NSA Bahrain's Commanding Officer (Meron) to

"[o]rder that a child be interviewed, without the parents' consent, if it is determined that the

interview is required to protect the health and safety of the child, and the parents are

uncooperative."  ECF No. 15-9.  Further, the preponderance of the evidence establishes that

Meron's authorization of the examinations occurred in conjunction with a FAP investigation,

meetings with Doe, consultation with other military officials and legal counsel, and after review

of a FAP report and recommendation that documented wide-ranging concerns regarding the

children's' odd behaviors in school, disheveled appearances, and an arguably inappropriate

relationship between Doe and K.D.  *See* ECF Nos. 18-2 & 18-3.  Based on this record evidence,

Meron's actions as Commander were clearly "of the kind" he had been employed to perform,

occurred substantially within the time frame of the Doe FAP investigation, and was in

furtherance of Meron's service to DOD.  *See* Restatement (Second) of Agency, § 228(1).

As to whether Meron acted outside the scope of employment in barring Doe from the

Bahrain School during minor Plaintiffs' examination, the order was issued to Naval Security

Forces, pursuant to Meron's authority as NSA Bahrain Commanding Officer to protect DOD

employees and assist the FAP investigation.  ECF Nos. 15-11.  That other persons may have

acted erroneously on this order and detained Doe the following day does not undercut that the

order itself was issued consistent with Meron's employment as NSA Bahrain Commanding Officer. *Accord Allaithi*, 753 F.3d at 1331–34; *Rasul*, 512 F.3d at 658. The Certification is proper as to Meron.

Plaintiffs contend that Meron was motived by "ill will" to detain minor Plaintiffs and Doe. Even if true, this argument fails. A defendant must be "*solely* motivated by his own purposes for conduct to fall outside the scope of employment." *Allaithi*, 753 F.3d at 1333. By contrast, Meron's actions in this case are consistent with DOD's directive to take all "reasonable actions to ensure the safety of activity duty members and DOD civilian/contract personnel and their family members," which can include interviews of the children outside the presence of their parents. *See* ECF Nos. 15-8 & 15-9. Viewed most favorably to Plaintiffs, Meron's motives are best characterized as mixed, and thus insufficient to defeat the Certification.

## 2. *Clark Jackson, Family Advocacy Representative at NSA Bahrain* (DOD)

Plaintiffs next argue that Defendant Jackson exceeded the scope of his employment by assisting DOD's investigation. *See* ECF No. 24-2. Jackson is a licensed clinical social worker employed by DOD as a Family Advocacy Representative at NSA Bahrain's Fleet and Family Support Center. ECF No. 18-2. Jackson conducted a preliminary investigation into allegations of abuse and neglect involving Doe and the children, and referred the matter to NCIS or FAP for follow-up assessment. ECF No. 18-2. Critically, Jackson's role as Family Advocacy Representative *expressly required* him to investigate such allegations, report on his findings, and recommend the proper course of action. *See* ECF No. 15-9 at 7–9. Even if the Court credits Doe's assertion that Jackson was in some way biased against Doe, *see* ECF No. 24-8 at ¶¶ 102–104, 108–09, the preponderance of the evidence demonstrates that Jackson's acts fell entirely

within his role as DOD Family Advocacy Representative and were, at least in part, motivated by a purpose to serve DOD.  *See* ECF No. 15-9.

> 3. *Dr. Barbara R. Craig, Director of Armed Forces Center for Child Protection* and *Kristen E. Webb, licensed social worker at Armed Forces Center for Child Protection* (DOD)

Defendants Craig and Webb examined the minor Plaintiffs.  Craig is a pediatrician employed by DOD as Director of the Armed Forces Center for Child Protection ("Child Protection Center").  ECF No. 18-5.  Webb is a licensed clinical social worker also employed at the Child Protection Center.  ECF No. 18-5.  Craig and Webb's entire job focus with DOD is to assist in investigations of suspected neglect and abuse, which may include an examination of suspected victims.  *See* ECF No. 18-5; *see also See* ECF Nos. 15-9, 18-1, & 18-3.  With respect to the minor Plaintiffs in this case, Craig and Webb examined the children contemporaneous with an ongoing abuse investigation.  *See* ECF No. 24-2.  No record evidence undermines the conclusion that Craig and Webb were acting within the scope of their employment.

Plaintiffs argue that the examination was "without legal authority, and that it was tantamount to "false imprisonment, interrogation and "sexual batter[y]."  *See, e.g.* ECF No. 1 at ¶¶ 69, 77, 78.  Plaintiffs more particularly contend that Craig "intentionally used force" when examining the children.  *See* ECF No. 24-2 at ¶ 13, 16.  Although this argument evokes salacious imagery, Plaintiffs lack evidence that the manner in which Craig examined the children was outside the scope of how a physician examines child victims to determine if they have been abused.  Indeed, medical doctors performing physical examinations often "breach" clothing or have direct contact with the patient's body parts, even intimate parts.  *See* ECF No. 18-5.  These acts are within the scope of a physician's employment, and particularly so when the physician is tasked with investigating possible neglect or physical and sexual abuse.  *See* ECF No. 30 at 16;

16

*Allaithi*, 753 F.3d at 1332 n. 3 (citing *Lyon v. Carey*, 533 F.3d 649, 651 (D.C. Cir. 1976) and

*Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981)). Colorful language aside, no record evidence

undermines the validity of the Certification as to Craig and Webb. Thus, it stands.

### 4. *Terry Greene, Principal of Bahrain School* and *David LaSpisa, Executive Office, NSA Bahrain* (DOD)

Plaintiffs also allege that Defendants Greene and LaSpisa acted outside the scope of their

DOD employment by facilitating the examination of the children. *See* Doe Affidavit, ECF No.

24-8 at ¶ 223 (alleging LaSpisa acted outside the scope of his employment by violating his oath

as a military member to " ' support and defend' the Constitution."); *id.* at ¶ 94–95, 207, 208–09

(alleging Greene acted outside the scope of her employment by not "protect[ing] students from

harm."). Greene, as principal of the Bahrain School, is also an employee of DODEA, and

LaSpisa was Meron's second-in-command at the time. *See* ECF No. 1. at ¶¶ 74–76, 120–124.

On Meron's orders as Commanding Officer, Greene provided physical space for Craig and Webb

to interview and physically examine the children. Greene also escorted the children to the

interviews and examinations. *See* ECF No. 1. at ¶¶ 74–76, 120–124. LaSpisa transported the

children to a medical clinic for examination per Meron's orders. ECF No. 1 at ¶¶ 74–76.

Facilitating an authorized investigation and following basic orders of their Commanding

Officer certainly falls within the sphere of duties DOD would expect Greene and LaSpisa to

perform. Such acts were also performed to assist DOD's FAP investigation. *See, e.g.* ECF No.

18-4 (stating that in abuse investigations, "All service members and DOD employees will ensure

effective coordination and cooperation with involved military community entities"); *see* ECF No.

24-8 at ¶ 223. No meaningful particularized challenge is made as to Greene and LaSpisa, and so

the Certification stands.

5. *John Scorby, U.S. Navy Rear Admiral and Commander of Navy Installation Command* and *Steven Stutzman, Regional Counseling and Advocacy Coordinator, Navy Installations Command* (DOD)

At all relevant times, Scorby was the Commander of the U.S. Navy's Region of Europe, Africa, and Southwest Asia. Stutzman acted as the Regional Counseling & Advocacy Coordinator for the Navy's Region for Europe, Africa, and Southwest Asia and was directly subordinate to Scorby. ECF Nos. 15-16 & 15-17. Plaintiffs contend that Scorby "permitted" the Navy to expend funds on the FAP's investigation into the Does, and Stutzman "facilitate[d] Craig and Webb's travel to Bahrain." ECF No. 1 at ¶¶ 38, 48, 60, 61. Such conduct is clearly within the scope of Scorby and Stutzman's respective employment, and was actuated with a purpose to facilitate an investigation authorized by DOD.

In sum, Plaintiffs' "unsubstantiated speculation about the ill will of [Defendants] is not enough, in and of itself, to transform acts which are facially within the scope of employment into acts that fall outside of that scope." *Maron*, 126 F.3d at 327 (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996)). Plaintiffs have failed to carry their burden of showing by a preponderance of the evidence that Defendants acted outside the scope of their employment. The certification reaches all individual Defendants, and the United States will thus be substituted as the real party in interest for all common law tort claims. 10 U.S.C. § 1089(a); 28 U.S.C. § 2679(d)(1).

The Court next turns to the United States' Motion to Dismiss.

## III.     The United States' Motion to Dismiss

The United States seeks dismissal of all common law tort claims against all Defendants for lack of subject matter jurisdiction. ECF No. 18-9 at 12–22.

Although the FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment," it also identifies certain express exceptions to its waiver of sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 813 (1976). Relevant here, "the government's waiver of sovereign immunity does not apply to '[a]ny claim arising in a foreign country.'" *Al-Zahrani v. Rumsfeld*, 684 F. Supp. 2d 103, 116 (D.D.C. 2010) (quoting 28 U.S.C. § 2680(k)); *see also Sosa*, 542 U.S. at 712 (holding that the foreign country exception "bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred."). A cause of action "arises" where "the last act necessary to establish liability occurred . . . i.e., the jurisdiction in which injury was received." *Sosa*, 542 U.S. at 705 (internal citations and quotations omitted).

Taking the facts pleaded in the Complaint as true, the examinations of minor Plaintiffs and detention of Doe were authorized and conducted at NSA Bahrain. ECF No. 1 at ¶¶ 54–86. An "American military base based on foreign soil is fully within the foreign country exception." *Roberts v. United States*, 498 F.3d 520, 522 n.2 (9th Cir. 1974); *see also Al-Zahrani*, 684 F. Supp. 2d at 117–19; *Heller v. U.S.*, 776 F.2d 92 (3d Cir. 1985). Accordingly, all common law torts claims arising from the individual Defendants' conduct are subject to the FTCA's foreign country exception, and must be DISMISSED under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

**IV.    Individual Defendants' Motions to Dismiss**

   **a.   Claims asserted under *Bivens***

The United States has been substituted as the proper party only for the common law tort

claims.  Accordingly, the Court must next ascertain the viability of the constitutional claims

(Counts I-V, and IX) against the individual Defendants.

Defendants move to dismiss all constitutional claims, arguing that the Plaintiffs cannot

sustain the action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

403 U.S. 1971 (1971). [6]  *See* ECF No. 18-8 at 19–31.  In *Bivens*, the United States Supreme

Court recognized a federal cause of action against federal officials to remedy a constitutional

violation.  *See Bivens*, 403 U.S. at 20002–05.  Mindful that adjudicating the constitutionality of

federal agents' alleged misconduct raises significant separation-of-powers concerns, the high

Court before and since has permitted suit rarely, and under well-defined circumstances.

The *Bivens* Court first recognized an implied cause of action to enforce the plaintiff's

Fourth Amendment search and seizure rights against FBI officers in connection with a

warrantless search and arrest, interrogation and detention.  *See Bivens*, 403 U.S. at 389–98.

Since *Bivens*, the Supreme Court has conferred an implied cause of action only twice more, for

alleged violations of the Fifth and Eighth Amendments.  *See Carlson v. Green*, 446 U.S. 14, 19

(1980); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979).  *Davis* extended an implied cause of

action in the Due Process context to permit suit against a Congressman for gender-based

termination, 442 U.S. at 248–49, and in *Carlson*, the Court permitted a *Bivens* action on behalf

---

[6] Defendants are sued "in their individual and official capacities."  *See* ECF No. 1.  *Bivens* only provides a remedy
for "an award for monetary damages from defendants in their individual capacities," and so all *Bivens* claims against
Defendants in their official capacities are summarily dismissed for failure to state a claim.  *See Higazy v. Templeton*,
505 F.3d 161, 169 (2d Cir. 2007); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ([A]
*Bivens* claim lies against the federal official in his individual capacity – not, as here, against officials in their official
capacity."); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996), *cert denied* 519 U.S. 1150 (1997).

of a federal prisoner's estate against prison guards, based on alleged Eighth Amendment violations that caused the prisoner's death.  446 U.S. at 17–19.

In *Ziglar v. Abassi,* the Court recently reinforced that "[w]hen a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis. The question is 'who should decide whether to provide for a damages remedy, Congress or the courts?"  137 S.Ct 1843, 1857 (2017).  The answer, the Court continued, will "[m]ost often be Congress."  *Id.*  Consequently, the *Abassi* Court — as in *Bivens* — "urged 'caution' before 'extending *Bivens* remedies in any new context.'" *Id.* (citing *Correctional Serv. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).  Simply put, a *Bivens* remedy is not available where "special factors counseling hesitation" caution the Court against ruling otherwise and risk invading the province of other branches of government.  *Id.*  (citing *Carlson*, 446 U.S. at 18).  Further, the high Court expressly emphasized that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

Accordingly, when a plaintiff asserts claims arising under *Bivens*, the Court must engage in a two-step analysis.  First, the Court must determine whether the claims require extending *Bivens* to a "new" or "novel" context.  *Abassi* at 1854–63; *see also Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230, at *5–6 (E.D. Va. Nov. 1, 2017).  If the claims would extend *Bivens* to a new or novel context, the Court then performs a "special factors analysis" to determine whether a *Bivens* action should be available.  *Id.*; *see also Attkisson*, 2017 WL 5013230, at *5–6.

At step one of the *Bivens* analysis, the Court must assess whether differences between previously sanctioned *Bivens* claims and the present case are "meaningful enough to make a given context a new one." *Id.* at 1859–60. The differences include but are not limited to:

> [t]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.*; *see also Malesko*, 534 U.S. at 68 (noting the Court "has consistently refused to extend *Bivens* to any new context or new category of defendants").

Plaintiffs argue that their constitutional claims do not require an expansion of *Bivens*. ECF No. 25 at 19–26. The Court disagrees. The Court easily concludes that this case differs from recognized *Bivens* claims in a number of important ways. The Defendants here include high ranking officials in the United States military and DOD, a far cry from FBI line agents or prison guards. Further, Defendants were operating pursuant to military policy and directives, a province almost always reserved for review, enforcement and adjudication through the Legislative or Executive branches. To further complicate matters, the Court would be called upon to determine whether and to what extent the constitution applies to United States citizens while physically on an overseas military installation.[7] *Accord In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157 (2d Cir. 2008). Moreover, claims asserted in this case are not only novel in their own right, it bears mention that *Bivens* remedies have never previously extended to claims even *remotely* similar to those of the Plaintiffs. Count IV, for example, asserts a "right to privacy" existing under the "penumbra" of the First and Fifth

---

[7] No court has extended *Bivens* to extraterritorial matters. *Id.*; *see also Hernandez v. Mesa*, 885 F.3d 811, 822–23 (5th Cir. 2018); *Meshal v. Higgenbotham*, 804 F.3d 417, 424–25 (D.C. Cir. 2015), *cert. denied*, 137 S.Ct. 2325 (2017); *Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1210 (11th Cir. 2016), *cert. denied* 137 S.Ct. 2321 (2017).

Amendments. *See* ECF No. 1 at ¶¶ 140–48; *see also* ECF No. 25 at 25–26 (citing *Griswold v. Connecticut*, 381 U.S. 479 (1965)). A *Bivens* remedy has never been extended to express violations of the First Amendment, let alone an implied First Amendment right. *See, e.g. Bush v. Lucas*, 462 U.S. 367, 390 (1983). Nor has the Court ever recognized a *Bivens* claim based on procedural due process, as alleged in Plaintiffs' Count V. *See Abbasi*, 137 S.Ct. at 1857 (citing cases). Accordingly, the claims in this case decidedly extend *Bivens* in new and novel context.

With regard to step two — "specific factors counseling hesitation" — the Court is equally convinced that granting a *Bivens* remedy risks too greatly an invasion into areas for which "hesitation" is indeed warranted. The "special factors" analysis requires the Court to "weigh[] reasons for and against the creation of a new cause of action, the way common law judges have always done." *Wilkie v. Robinson*, 551 U.S. 537, 554 (2007). "When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Abbasi*, 137 S.Ct at 1861.

Obviously, adjudicating this case will necessarily involve novel questions concerning the extraterritorial application of the United States Constitution. *See Hernandez*, 885 F.3d 811, 822–23 ("[T]he extraterritorial aspect of this case is itself a special factor that underlies and aggravates the separation-of-powers issues . . ."); *Alvarez*, 818 F.3d at 1210; *Meshal*, 804 F.3d at 424–25; *accord In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157 (2d Cir. 2008)). Extension of the Constitution abroad "involves a host of administrability concerns, making it impossible to assess the 'impact on governmental operations systemwide.' " *Hernandez*, 885 F.3d at 822 (quoting *Abbasi*, 137 S. Ct. at 1858); *see also id.* at 822 n.22.

Even more troubling, and unlike *Bivens*, resolution of this case requires this Court to pass on the constitutionality of military policy and practices, and risk invading the plenary powers of

the Legislative and Executive branches. Despite Plaintiffs' protests to the contrary, *see, e.g.* ECF No. 25 at 1, the Complaint clearly and repeatedly avers that Plaintiffs' constitutional rights were violated by DOD employees acting under military orders. *See, e.g.* ECF No. 1 at ¶¶ 54, 56, 60, 64, 72, 130, 144; *see also* ECF No. 25 at 9–11. At its very core, therefore, this case requires the Court determine the constitutionality of the military's policies for investigating child abuse and neglect, *and* the legitimacy of military decisions made under those policies in a specific investigation. *Accord Abbasi*, 137 S.C at 1860 ("Even if the action is confined to the conduct of a particular Executive Officer in a discrete instance, these claims would call into question the formulation and implementation of a general policy."). Allowing a *Bivens* remedy in this case would certainly invade the province of the military, and by extension the Legislative branch which exercises "plenary control over rights, duties and responsibilities in the framework of the military establishment." *Lebron v. Rumsfeld*, 670 F.3d 540, 548–49 (4th Cir. 2012) (quoting *Chappell*, 462 U.S. at 301); *see also United States v. Stanley*, 483 U.S. 669, 682–83 (1987) (cautioning against suits that could be "problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands); *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673 (1977) (cautioning against litigation that would require "members of the Armed Services to testify in court as to each other's decisions and actions."); *Hagenbeck*, 870 F.3d at 43 ("The Supreme Court's separation-of-powers concern with implied actions under the Constitution, present in all cases in which plaintiffs have sought to extend *Biven*'s reach, is particularly acute in the military context."); *Vanderklok v. United States*, 868 F.3d 189, 206–07 (3d Cir. 2017) (citing cases); *Cioca v. Rumsfeld*, 720 F.3d 505, 510–12 (4th Cir. 2013). *Bivens* cannot be read to afford a remedy to such expansive claims.

Also critical to the "special factors" analysis is that where "alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S.Ct. at 1863. Plaintiffs not only have "alternative, existing process[es] for protecting" their interests, they have availed themselves of those remedies. *See* ECF No. 18-7; *Wilkie*, 551 U.S. at 550. Plaintiffs filed administrative claims with the agencies, which produced settlement offers that were ultimately rejected. Although Plaintiffs now claim that the remedies available were "limited" and "insufficient," ECF Nos. 1 at ¶164 & 25 at 27–29, the Plaintiffs' satisfaction with the available remedies is not determinative. To preclude a *Bivens* action, the available "alternative, existing process" need not provide complete relief. *Dunbar Corp. v. Lindsey*, 905 F.3d 754, 762 n.5 (4th Cir. 1990) (citing *Bush v. Lucas*, 462 U.S. 367 (1983) and *Schweiker v. Chilicky*, 487 U.S. 412 (1988). Rather, the alternative remedy must simply be "comprehensive" and "adequate." *Id.*

Here, the Military Claims Act ("MCA") afforded Plaintiffs *at least* one comprehensive and adequate avenue for relief. *See* 10 U.S.C. § 2733; ECF No. 18-8 at 23–224. The MCA provides "U.S. civilian employee[s]" and their family members a remedy for claims arising from injuries caused by "a civilian officer or employee of [DOD] . . . or a member of the Army, navy, Air Force, Marine Corps, or Coast Guard . . . acting within the scope of his employment." 10 U.S.C. § 2733; 32 C.F.R. § 536.136(b). The MCA permits suit in military court for monetary damages arising from "any person injured by the military." *See id.* (providing "that the judge Advocate General of each service may award up to $100,000 from the Treasury to any person injured by the military"); *see also Vance v. Rumsfeld*, 701 F.3d 193, 201 (7th Cir. 2012) (en banc).

Plaintiffs contend, however, that "none of the agencies or Defendants responded to or attempted to resolve the [MCA] administrative claim filed by the Plaintiffs." ECF No. 1 at ¶¶

94–95.  This is not true.  As Plaintiffs ultimately acknowledge, the Navy tendered a settlement offer on the MCA claims three days after this case was filed.  *See* ECF No. 25 at 28; *see also* ECF No. 15-19.  Thus, Plaintiffs not only had a process available to them to protect their interests, their participation in that process exacted a measure of success.

In sum, taking all facts alleged in the Complaint as true, Plaintiffs' claims "bear little resemblance to the three *Bivens* claims the [Supreme] Court has recognized in the past," and there are significant "special factors counselling" against creating an implied damages remedy for Plaintiffs' constitutional claims.  *See Abbassi*, 137 S.Ct. at 1356–58.  Because Plaintiffs' constitutional claims arising under *Bivens* fail, the motion to dismiss must be GRANTED as to Counts I through V.

### b. Claims as to Defendant Craig

Defendant Craig does not join the other individual Defendants' 12(b)(6) dismissal motion.  Rather, the United States asserts that because Craig is a DOD medical professional, the Government is substituted as the proper party for Craig's constitutional and common law claims alike under the Gonzalez Act, 10 U.S.C. § 1089.  Further, the United States argues that dismissal of Craig's claims is warranted because *Bivens* actions cannot proceed against the United States as a party.

Although the United States is correct that *Bivens* actions generally do not lie against it, *FDIC v. Meyer*, 510 U.S. 471, 478 (1994), dismissal on this basis requires the Court to hold that individuals covered by the Gonzalez Act are absolutely immune from all suits against them in their individual capacity, including for constitutional violations.  *See* ECF No. 18-8 at 17–19. While the argument has some appeal, *see Hui v. Castenada*, 559 U.S. 799, 805-813 (2010) (holding that Public Health Service officials falling under identically worded statute, 42 U.S.C. §

33(a), are absolutely immune from *Bivens* claims), it is also a novel defense that few, if any, courts have squarely addressed. *See Clinton v. Brown*, No. 3:15-cv-0048-FDW-DSC, 2015 WL 4941799, at *5 (W.D. N. Ca. Aug. 19, 2015) (finding, in the alternative, that if a *Bivens* remedy existed, the Gonzalez Act supported immunity for federally-employed physicians from *Bivens* suits).  This Court notes that even if Craig were an individual Defendant, rather than substitution of the United States, the claims against her would not survive for the same reasons articulated above.  Accordingly, the *Bivens* claims as to Craig are likewise dismissed.

### c. Conspiracy Claim under 42 U.S.C. § 1985 (Count XI)

Plaintiffs contend that all Defendants conspired with each other to violate Plaintiffs constitutional rights, supporting a claim brought pursuant to 42 U.S.C. § 1985.  *See* ECF No. 1 at ¶¶ 203–08.  To survive dismissal on this claim, the plaintiffs must plausibly aver:  (1) the existence of "a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Thomas v. The Salvation Army Southern Territory*, 841 F.3d 632, 637 (4th Cir. 2016).  "[T]he law is well settled that to prove a section 1985 'conspiracy,' a claimant must show "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."  *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (internal citation omitted).

The Complaint baldly asserts that "Defendants entered into an agreement in which they colluded to commit an illegal search and seizure of the three minor Plaintiffs," and that unspecified Defendants "participated, facilitated or abetted the unlawful acts . . . in furtherance of the common scheme which they agreed upon."  ECF No. 1 at ¶¶ 204–05.  Plaintiffs do not

allege specific incidents of class-based discriminatory animus.  Rather the Complaint baldly

states that "each of the Plaintiffs is African American  . . . that all but one of the Defendants are

Caucasian and that their actions against the Plaintiffs were based, at least in part on their race and

racial hostility."  ECF No. 1 at ¶¶ 161–62, 64; *zee also* ECF No. 1 at ¶¶ 203–08.  Plaintiffs offer

absolutely no facts to support that the Defendants were motivated by racial animus during their

non-specific collusive activities.  This kind of conclusory legal allegation couched as fact is

insufficient to survive challenge.  *See, e.g. A Soc'y Without a Name v. Va.*, 655 F.3d 342, 346–47

(4th Cir. 2011); *Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 540–42 (D. Md. 2014); *Ciralsky

v. CIA*, No.1:10cv911 (LMB/JFA), 2010 WL 4724279, at *7 (E.D. Va. Nov. 15, 2010), *aff'd* 459

F. App'x 262 (4th Cir. 2011), *compare Sines v. Kessler*, No. 3:17-cv-00072, 2018 WL 3345300,

at *7–22 (W.D. Va.  July 9, 2018).[8]  Count XI shall be DISMISSED.

## V.     Conclusion

For the foregoing reasons, Plaintiffs' motion to set aside the scope of certification, ECF

No. 24, is DENIED and Defendants' motions to dismiss, ECF Nos. 15 & 17, are GRANTED.  A

separate Order follows.


_____7/30/2018_____                            _____/s/_____
Date                                                                         Paula Xinis
                                                                                 United States District Judge


---

[8] Alternatively, as in *Abbassi*, the Court would find that dismissal of the § 1985 conspiracy claim is warranted because the Defendants, as DOD agency officials and employees, enjoy qualified immunity from suit.  This is because the law is not yet clearly established on whether the intra-corporate conspiracy doctrine applies to Government agency officials accused of conspiracy.  *See Abbassi*, 137 S.Ct. at 1865–69.